### THE UNIVERSE.

(District Court, D. Oregon. June 4, 1901.)

No. 4,544.

1. CONTRACT OF AFFREIGHTMENT—BREACH—LIEN.
  Where parties in possession and control of a steamship under a contract with the owners assigned and transferred such charter and contract to libelant, under which said steamer was to proceed to a certain point, and take on a cargo, but the contract was not performed either on the part of the assignor of the contract or of the vessel, no lien exists against said vessel, as the contract of affreightment had not been entered into.

2. SAME.
  Where the breach of a charter party did not take place in the state of Washington, and the offending vessel was never within the jurisdiction of that state, no lien for the breach is created by virtue of its laws.

3. MARITIME LIEN.
  A state legislature has no authority to create maritime liens.

In Admiralty.

Platt & Platt, for libelant.
Williams, Wood & Linthicum, for claimant.

BELLINGER, District Judge. The libel in this case alleges that about the 15th day of November, 1900, one R. A. Graham was in the possession and control, under time charter with the owners, of the steamer Universe, and on said date chartered said steamer unto Pope & Talbot to take a cargo of lumber from Puget Sound, in the

district of Washington, to Port Pirie, in South Australia; that said Pope & Talbot, on or about the date aforesaid, assigned and transferred said charter and contract to the libelant, under which said steamer was to proceed to Puget Sound, and take on the cargo of lumber, on or before the 15th day of March, 1901; that the libelant company kept all the conditions and undertakings, on its part, of the said contract, but that neither Graham nor the vessel has performed or kept the undertakings on their part; that said vessel did not proceed to Puget Sound at all, but has gone to the port of Portland, in the district of Oregon, where she now is; for which violation of said charter party libelant claims damages in the sum of $20,000. To this libel the owner of the Universe excepts upon the ground that it appears upon the face of the libel that no lien exists against said vessel by reason of the matters therein alleged. No lien is created under such a charter as is described in the libel, unless the contract of affreightment has been entered into. The principle governing this case is laid down in the case of The Keokuk, 9 Wall. 519, 19 L. Ed. 744. In that case the court says:

"The law creates no lien on a vessel as a security for the performance of a contract to transport a cargo until some lawful contract of affreightment is made, and the cargo to which it relates has been delivered to the custody of the master, or some one authorized to receive it."

The cases cited in behalf of the libelant are to the same effect. The case of The G. L. Rosenthal (D. C.) 57 Fed. 254, was a case where there was an agreement to tow libelant's boat on her various voyages throughout an entire season, and where there was an abandonment of this contract near the end of the season. It was held that the contract was not a separate contract for independent voyages, but a contract for services during the entire season, and so the case was one where the contract had been entered into and partly executed.

It is contended further on the part of the libelant that, inasmuch as it was provided in the charter party that the ship should go to Puget Sound, and take a cargo of lumber therefrom, the contract was one to be performed within the district of Washington, and the libelant is entitled to have the remedies provided for by the laws of that state applied as a part of the contract between the parties. But the breach complained of did not take place in the state of Washington, and, the offending vessel never having been within the jurisdiction of that state, no lien is created in virtue of its laws. Moreover, state legislatures have no authority to create maritime liens. The Belfast, 7 Wall. 644, 19 L. Ed. 266. The exceptions to the libel are allowed.